The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. We'll hear argument this morning in No. 2019-1678, Alford v. United States. Mr. Arbab. May it please the Court, this is John Arbab for the United States. The Court of Federal Claims held the United States liable for a temporary physical taking of plaintiff's properties by flooding and awarded plaintiff's compensation where plaintiffs in fact greatly benefited from actions of the Army Corps of Engineers. To award plaintiff's compensation in these circumstances amounts to a windfall. The CFC's judgment should be reversed for any of four independent reasons. First, at trial, plaintiffs did not even attempt to carry their burden of proving causation as required by St. Bernard Parish, a decision ignored by the CFC. As in St. Bernard Parish, the Court here can and should reverse on this ground alone and need not reach the government's other grounds for reversal. Number two, if the Court reaches the issue, the Corps is not liable for a taking of plaintiff's properties under the Relative Benefits Doctrine. Number three, were the Court to reach this issue, the Doctrine of Necessity precludes liability for a taking of plaintiff's properties. Fourth and lastly, if the Court were to reach this issue, under the multi-factor analysis required by the Supreme Court's decision in Arkansas Game, which the CFC ignored, the Corps' temporary flooding of plaintiff's properties did not amount to a taking. Now first, regarding causation, the CFC erroneously ignored St. Bernard Parish. Under that precedent, plaintiffs were required... Counsel, could you explain to me why you think intentionality is completely irrelevant in this context? I mean, isn't it easier to know what caused something when it was done intentionally rather than when it was done unintentionally? Your Honor, I believe that intentionality is irrelevant to the causation analysis. It is part of the Arkansas Game analysis if the Court were to reach that issue, whether the temporary flooding here amounted to a taking. But in terms of causation, intentionality is not a relevant consideration. What is relevant is that the plaintiffs had to present evidence comparing the damage to their properties that actually occurred in 2011 when the Corps raised the level of Eagle Lake to 90 feet with the damage that would have occurred if there had been no government action at all. That is, if the Corps had not built the segment of the levee near Eagle Lake. Is it your position that there is absolutely no way the plaintiffs in this case could have ever proven causation? I think the most relevant consideration is that they did not even attempt to prove causation. And even though it wasn't the government... How about a hypothetical question? Could there be any way for them to prove causation under your theory? Your Honor, the plaintiffs would need to make the comparison that I've just described and then to show that the damage that actually occurred was greater than the damage that would have occurred if the government had taken no action at all. So that would be a hypothetical case where the plaintiffs could prove causation. But on these facts, do you think there's any way that could have been done? On the facts of this case, Your Honor? Yes. No. And actually the government did not bear the burden of disproving causation. That's not my question. I'm just trying to find out under your legal theory on these facts, is it your position that they could never prove causation? Not just that they didn't offer enough evidence, but that there's no way they could prove it on these facts? Your Honor, yes. On the facts of this case, there was no causation. And the government didn't need to disprove causation, but the government did put in evidence applying the St. Bernard Parish causation principles. And the government's undisputed trial evidence showed that if the court had not built the levee near Eagle Lake, the water level in Eagle Lake would have reached 107.5 feet in 2011, or 17.5 feet higher than the 90-foot level that actually occurred when the court raised the level of Eagle Lake. The parties also stipulated at trial that the plaintiff's cost of repairs, which was the only damages they sought, would have been significantly higher if the levee had breached in 2011. That is, if, in effect, the court had not built the levee. For example, regarding the Alford property… …there was going to be an inevitable flood that would have done more damage, right? Yes, if the levee had breached, if the court had not acted. Right. So that the anticipation was an inevitable natural flooding that would have done more damage. And is that not a different flooding than this intentional act to prevent that flooding? I mean, I see your arguments going more toward your other theories, like your theory of necessity or your theory of relative harm. Well, Your Honor, under the theory of relative benefits, under the Spohn and Barger doctrine, the Supreme Court decision, I think the evidence or the temporal focus would be somewhat different. At least as I conceive or as the government conceives the causation question, one looks at what would have happened in April of 2011 if the court had not acted at all. Under the relative benefits doctrine, we view it as a broader analysis, looking at what would have happened over a period of years. Mr. Arbath? Mr. Arbath? Yes, Your Honor. Judge Schall here. To pick up a little bit on the colloquy you were having with Judge O'Malley, why is causation really an issue here? I mean, it seems to me clear that the immediate cause, as you forthrightly acknowledge in your brief, of the damage to the piers and the docks at Eagle Lake was the raising of the level of the water in the lake. There's no question that that's what caused the damage here. And doesn't that make this case different from St. Bernard Parish, where the question of damage was open? There the question was, did the actions of the Corps of Engineers with respect to the Mergo and the VPG cause the damage that came from the flooding of Hurricane Katrina? So why is causation an issue here? Your Honor, it's an issue because under St. Bernard Parish, the relevant causation question is, what would have happened if the Corps had not acted at all? And here, we believe that that requires looking at what would have happened if the Corps had not built the segment of the levee near Eagle Lake and had not built the Muddy Bayou control structure. But looking at it, isn't it really, though, it seems to me, a question of the Corps caused the damage, but in doing so, the Corps prevented much further damage, a catastrophic breach of the levee? I mean, isn't your best argument, look, yes, we caused the damage to the piers and the docks, but the relative benefits doctrine applies, because if we hadn't done that, there would have been a breach of the levee, as everyone agreed, and there would have been much greater damage. Isn't that your best argument? Why get into all this discussion about what was built, you know, years before and all? Well, Your Honor, the government would be satisfied with a favorable decision that is premised on the relative benefits doctrine. As I was trying to get into with Judge O'Malley, I think the principal difference between the causation doctrine and relative benefits in our context here is that one would look at a broader temporal time period for the relative benefits analysis. In other words, over a period of time, including 2011, but not just looking at 2011, what benefits did the plaintiff's properties receive from the Corps' flood control structures in the area? And again, the evidence there was uncontested that plaintiff's properties have been benefited by the Corps' preventing Eagle Lake from flooding the property in many years by having the levee there. Is that true across the board, or would there need to be a remand for purposes of determining relative benefit for each property? No, Your Honor, there would be no need for a remand, because as we point out in the brief, the government's evidence at trial was unrebutted. But we have an actual finding by the claims court, don't we, that they were better off than they would have been if the lake level hadn't been increased and the levee hadn't been breached? Yes, Your Honor, that's certainly true for the events of April 2011. I see that I'm into my rebuttal time, so perhaps I should stop at this point. Okay, unless there are other questions, why don't you save your rebuttal time, and we'll hear from Alston. May I proceed, Your Honor? Yes. I'm Sheldon Alston on behalf of the Appellees, and I appreciate the conversation that just took place. The causation question really shouldn't be part of the equation. Go ahead. You make much of the idea that this was an intentional act by the government, and you seek to distinguish various cases on that ground. But isn't it true that every government program is an intentional program, and that the building of the levee in the first place was intentional? And in Spauenberger, what was intentional was the overall government program. And if I understand the cases correctly, intentionality is always a given, because the government can't be liable unless it takes an affirmative act. And the question becomes one of foreseeability. So I don't understand how you can say that this case is somehow unique because the government action is intentional. I appreciate that, and I'm not sure – I'm just saying that it doesn't fall into the St. Bernard Parish kind of equation that the government tries to push it into. Every taking, there has to be a public necessity. There has to also be a good that comes from every taking, right? And that's one place that it gets a little bit more difficult. The idea of the taking is the benefit is for the good of the public, and the one person is having to pay the 100 percent of the price. And that's exactly what happened in this case, right? My clients paid for the benefit of the good. This isn't a situation in which the plaintiffs themselves didn't benefit. Suppose that the only damage in the event of a levy breach would have been to the plaintiffs. Would you have a case here? You know, Judge Smith and I had a similar conversation in closing. It would be a completely different case, and I don't know that I would. But what I know here is that you have to somehow balance that concept that I'm paying 100 percent of the price for the public good, which is a taking, with that idea that I'm receiving some benefit of the levy. But it begs the question, if the only question is you're receiving a benefit, then every levy built would be of a benefit. …found finding these plaintiffs were better off because of the rising of the lake level than they would have been if it hadn't been raised, right? I mean, you make a specific finding to that effect. I think I appreciate the fact that the real crux of this case is what y'all are saying, and that is, hey, if the mainline levy would have breached, you would have suffered greater damages. That's the question, right? And Judge O'Malley's right that that doesn't really fall in the causation analysis. That calls on the necessity and the relative benefits doctrine analysis is where that falls. That doesn't fall in the causation piece. And so if you ask that question under, say, the necessity doctrine, that's the idea, right? A balditch is the case of the fire raging through Boston, and they take down a house. Well, your house is going to burn up anyway, or the enemy in Manila in the Caltex case is going to take over your refinery. You're going to lose that anyway. Those are kind of the necessity doctrine-type defenses that would be really an exception to the takings doctrine, and I want to make that clear. So this is a taking, and once the taking occurs, the government says, well, wait a minute. It would have happened to you anyway. So what are you really complaining about? You get relative benefits doctrine or this necessity defense-type idea. One thing that ties to is every levy built falls into this category, doesn't it? Kind of what you were saying in the sense that if you build a levy, it's to stop water from coming over someone's property, right? So if that's the only question, then the government has the free right to build a levy anywhere they want on anyone's property and stop water from flooding it. And say, well, wait a minute. You're receiving a benefit because I'm stopping you from flooding, and I'm going to take half your land for the levy. And that's not the case. You have to pay for the levy. Mr. Alston, excuse me. If the government takes land to construct a levy, there would be an imminent domain situation, and there would be compensation there. But let me ask you, I think, let me ask you one question. Assume for the moment that the government had not raised the level of the water in Eagle Lake, okay? And assume further that the levy had breached and there had been terrible damage to your clients and others. In that situation, do you think you would have had a cause of action in tort? The cause of action being, look, Corps of Engineers, you should have raised the level of the water in Eagle Lake. If you had, the levy wouldn't have breached. No. I don't think, no, I don't think you'd have that claim. I think the courts have been clear about the ability to kind of make the Corps do something versus when they actually do a taking. Those are two different things. I was careful in my lawsuit, actually. Oh, no, I agree. You're not asserting a tort. But I'm saying, do you think there'd be a cause of action for Corps negligence if the Corps had failed to raise the level of the lake and, as a result, the levy had breached? I know it's not a takings claim, but would there have been a tort claim for negligence on the part of the Corps? I don't think so. I don't think that would be successful, Your Honor, no. Okay. Go ahead. Counsel, as I understand it, what you're saying, am I correct, is that you don't think the government can pick and choose who is sacrificed for the greater good. Is that right? That is the basic idea of a taking, yes. All right. But it's true that not only would others have been sacrificed, but that these particular property owners would have been even more so sacrificed than they were under this circumstance. Isn't that right? I would think that's true. My expert said it was a high likelihood, a 95% chance that levy was going to break. So I'm not running from that fact. The problem is if that's true, if that's the question, then you're giving the government the right at any moment to say, well, if you're going to get a benefit from this, I get to do the taking. It's the levy in the eminent domain. Why has the levy in the eminent domain even happened? Why is it paid for? Why is the expansion of – one of my favorite facts in this is that the expansion, the permanent fix, the raising of the lake was a temporary fix. The permanent fix that went in afterwards, they had to purchase additional land extending the size of the levy. Makes sense. And they had to pay for that. Why? What's the difference between the water put on my land as a temporary berm and the permanent sand put on other people's land for a permanent berm? For just what y'all are saying, for the benefit of everyone, but one person is paying that price, but that person is receiving a benefit too, their land would be flooded just like mine. But you have to pay for that when you put a levy on someone's land. Just as if you put a temporary water berm. This case is a little different. I think it's unusual to use water as a levy, but that's what they did. They took water from a separate source, not from the Mississippi River, mind you, from what we call the backwater. So it was the landside levy water and put it into the lake, so water that wasn't going to flood my property if the levy broke, and raised it to put pressure on both sides of the levy. Under your theory, wouldn't Sponenberger, for example, come out the other way? Because there was a situation in which the government flood control program benefited lots of people. And it benefited the plaintiff more than it hurt her. So in those circumstances, wouldn't there be liability? And yet the Supreme Court said there wasn't. You know, the Sponenberger is kind of a balancing test that we have to use. But in Sponenberger, there was a line of levies, and they let a lower place in different places to make sure the levy survived. And the plaintiff was saying, well, I wanted you to put the whole levy up the whole way. And that was that claim, right? It's kind of a, you didn't do enough there. That's not our case. Our case is a direct action where they took my land and created a water levy for a temporary purpose. So that makes it different just under the facts. But even if you take kind of the language of the slight damages versus great benefit analysis, you run into really a clearly erroneous standard in Judge Smith who looked at that and said, no, these are significant damages. A lot of the trial was about the kind of the investment-backed expectations of these plaintiffs and what they expected from living on that lake. And one of the things that the court, and I think everyone would agree, that they certainly did not expect government action to intentionally flood their property. That's an expectation they were comfortable having. And so these weren't slight damages done to my property. These were significant damages that took away their benefit. And so you run into – go ahead. It did prevent an even more significant damage to these particular plaintiffs. I mean, it would be a different situation if these plaintiffs had suffered more damage as a result of the level of the lake increasing than they would have if the levy had breached. Totally different case. But these people were, by their own admission, by their own finding of the Court of Federal Claims, better off than they would have been if the government hadn't raised the lake level. I would agree. I mean that I'm not – I don't disagree with that fault. But that's not the question of Sponenbarger. Sponenbarger doesn't say that if you receive benefit, then it's still not a taking. It's not an exception in that way. It's interesting. In normal limited domain, you don't get the benefit of a road coming onto your property. If a road comes onto your property and it increases the value of your land, you don't get that benefit. They still have to – the government still has to pay for the road as if you weren't receiving that benefit because the Constitution says it has to be just compensation. And so when you use my land for your water berm, for your levy, whether it's temporary or not, you have to pay for the taking. You have to pay for what you've taken for that moment. And the fact that you would have been hurt worse if the levy would have breached, well, that gets into that equation where you say, well, if it breached, there would have been 900,000 acres that got flooded. You would have had 4,000 structures that were flooded, not the 40 structures of my clients. And that's a different thing, and that's the balancing act that Sponenbarger raises. That's the relative benefits test where they say, well, if it's just slight damage, this wasn't slight damage to my clients. This was 100% damage to my clients. Apparently, they couldn't even use their houses during the flood anyway, so it took it away from them. If it wasn't 100% damage to your client, the record shows and the finding is that they didn't suffer the kind of catastrophic damage to their property that would have happened if the levy had breached. In fact, I meant at the time of the flood, they couldn't go to their property. So at the moment, it was 100%. But you're right. Once the flood went back down, their houses were fine, and that was a good thing, and they received a benefit for that. I'm not afraid of that. What I don't think the law is, though, is that if you receive a benefit, they can take the rest of your property. It's also not the law that you can take a lot of someone's property, but as long as they get benefit out of it, then the government is free to do it. Sponenbarger doesn't say that. Well, it's a relative benefit. It's a relative benefit analysis. Do you read Sponenberger to talk about the greater good benefits or just the greater benefits to the individual property owner? I think if you really read Sponenberger and want to understand what she's talking about, what the complaint is in Sponenberger, that is the lower parts of the levy that are creating the damages, or what she calls damage, or the plaintiff in that case called damages to their property. That, yes, I do think you get into the conversation that it's a public question of what's the greater good. I don't think it's just as to that individual. But that goes back to my point about you couldn't put a levy on my land. Let's say the permanent fix was forever. They would have taken land if the flooding was permanent, so they'd take that property permanently, but they still saved my houses. Well, no, we wouldn't have this question. That's any dam built, right? If you build a dam, it's flooded. Yes, Darolson, excuse me. You've been discussing Sponenberger with Judge Dyke and Judge O'Malley, but it does seem to me that a number of cases in the court of claims have followed Sponenberger in situations that are quite similar by reasoning to this case. I'm thinking of Hardwick, Arkmo Farms, Accardi, and the Bartz cases. Those do seem to focus on not this greater good balancing that you've been referring to, but rather on the balancing of the interests of the particular plaintiff involved. And those cases do seem to support an application of the relative benefits doctrine in a situation like this, it seems to me. Well, I understand that. In fact, there are cases that do it to the individual. And I'll accept that even under that Sponenberger analysis, if you read Judge Smith's opinion and the record in this case, my client suffered significant damages. That's the first piece you have to get past kind of in that Sponenberger fault process. Once you accept that my client suffered significant damages, then you can start talking about kind of the relative benefits analysis. Their houses weren't taken away, and that's a good thing, so they received some benefit. But the idea that this isn't significant damages simply isn't what we proved it at trial, and Judge Smith agreed with us under that scenario. Okay. Unless there are further questions, we'll hear rebuttal from Mr. Arbat. Hearing none, Mr. Arbat? Yes, thank you, Your Honors. I think I have three points I'd like to make. First of all, on intentionality, I think it's, as I was saying in my opening argument, I think intentionality is not relevant to the causation question. I would defer the court back to St. Bernard Parish, where the court discussed the Arkansas game case. And there in St. Bernard Parish, the court made it quite clear what the proper comparison was in Arkansas game, that you compared what would have happened with the dam at issue in place and without the dam in place. And that's the question. That's not a matter of did the court build the dam intentionally. It's a question of how do you compare what would have happened if the dam was built and if there were no dam in place. Secondly, Mr. Alston referred numerous times to the fact that, in his view, the court built a so-called temporary water berm on plaintiff's properties, namely over their piers and boathouses. Well, with all respect, I don't think that labeling something a temporary water berm really gets at the legal issues that are posed here by causation, by the relative benefits doctrine, by the doctrine of necessity, and by whether there was even a temporary taking under Arkansas game. I think, as Judge Dyke pointed out numerous times... Well, isn't there a difference between the government not acting and therefore allowing a flood to naturally occur, and the government deciding to purposely pour water onto a land in order to essentially act as a buffer? Your Honor, the question still would need to be asked. What is the relevance of that fact under any of the four doctrines that the government is relying on here? And I think one of the critical questions is what would have happened if the court had not put the temporary water berm on plaintiff's boathouses and piers in April of 2011? As we know, the CFC made a finding that there would have been a near certain breach of the levy, and not only would the piers and boathouses have been damaged, but the houses would have been totally inundated. So plaintiffs would have been left much worse off if the court had not placed the so-called temporary water berm on their piers and boathouses. So, Mr. Arben, you're arguing there the relative benefits doctrine, right? Well, Your Honor, I believe the relative benefits doctrine has a broader temporal scope, but I think you could view it that way. You could view it as an element of – as a consideration under the causation doctrine. Mr. Alston said numerous times that we – his clients did not suffer only slight damages under the Sponenberger concept. But I would just point out that the Court of Federal Claims itself found that all but one of the properties only suffered 12% or less diminution in value. And their damages certainly would have been much greater if the levy had breached. But what about the property with the – what about the property with the 70% damage? Is that different? Your Honor, I believe it's the O'Malley property – no, I'm sorry. No relation. The McNeely property. Yes. That the CFP found suffered – Under the government, it didn't suffer 70% damage, right? It was only about 20%. The McNeely property, the CFP found, suffered about 40% damage. But even so, that – when you look at the causation analysis question, when you look at any of the other doctrines we're speaking about, that fact in and of itself is not dispositive of whether that individual plaintiff was entitled to just compensation. Okay. Unless there are further questions from my colleagues, I think we're finished with the argument. Hearing none, I thank both counsel. The case is submitted. That concludes our session for this morning. The Honorable Court is adjourned until this morning at 11 a.m.